UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KET T. HAWKINS, Jr., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KAISER PERMANENTE SACRAMENTO, *et al.*, <br><br> Defendants. | Case No. 2:22-cv-00034-KJM-JDP (PS) <br><br> **ORDER** <br><br> SCREENING PLAINTIFFS' FIRST AMENDED COMPLAINT AND DENYING PLAINTIFFS' SECOND REQUEST TO APPOINT COUNSEL <br><br> ECF Nos. 9 & 10 <br><br> RESPONSE DUE WITHIN THIRTY DAYS |

Plaintiffs Ket Hawkins, Jr., and Lajuana L. Thompson, proceeding individually and as co-representatives of the estate of their deceased father, Ket Hawkins, Sr. (the "decedent"), filed a pro se first amended complaint ("FAC") alleging that defendants Kaiser Permanente Sacramento, Sacramento Mather VA Medical Center, McKinley Park Care Center, and Gramercy Court Skilled Nursing violated 42 U.S.C. § 1983 and certain California laws by failing to provide the decedent emergency medical care, resulting in his premature death. ECF No. 10. Although the FAC fails to state a claim, I will give plaintiffs an additional chance to amend before recommending that this action be dismissed.

1

**Screening and Pleading Requirements**

Because plaintiffs are proceeding *in forma pauperis*, the court screens the FAC under 28 U.S.C. § 1915(e), which requires the dismissal of any complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief against a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court construes a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

**Allegations in the FAC**

Plaintiffs allege that on the night of December 6, 2019, the decedent arrived at the emergency room of Kaiser Hospital South accompanied by his son, plaintiff Ket Hawkins, Jr., who informed intake staff that his father's symptoms were consistent with a urinary tract infection ("UTI"). On December 7, 2019, the decedent was admitted as a patient to Kaiser Hospital South. ECF No. 10 ¶¶ 2, 3, 20. Failing to notice that the decedent's lab results indicated

2

1  that he had a UTI, Kaiser doctors discharged him the following day without treatment. *Id.* ¶¶ 20,
2  42. Experiencing confusion and in severe pain, the decedent returned to the emergency room one
3  day later, on December 9, 2019. At that point, ER staff correctly determined that the decedent
4  was suffering from a UTI; he was admitted and received antibiotics. A Kaiser doctor apologized
5  for previously "missing" the diagnosis. *Id.* ¶¶ 4, 20. On the evening of December 9, 2019, the
6  decedent was moved to McKinley Nursing Facility, where he remained for two days until he
7  developed sepsis as a complication from the UTI. He was then transported back to Kaiser South
8  and was again admitted for treatment. *Id.* ¶ 4, 20, 33.

Throughout the subsequent weeks, the decedent was transferred between Kaiser hospitals and nursing facilities as he developed additional UTI complications, namely swelling and weight gain, which worsened his congestive heart failure. On December 24, 2019, he was admitted to Kaiser Hospital North, where he ultimately underwent kidney dialysis followed by intubation before he passed away on February 1, 2020. ECF No. 10 ¶ 20, 24.

**Discussion**

Plaintiffs do not state a plausible claim under § 1983, which provides a remedy for a constitutional violation committed by a party acting under color of state law. *See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Critically, the FAC does not sufficiently allege that any defendant is a state actor—a jurisdictional requirement for a § 1983 claim. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981).

Private hospitals and nursing homes generally are not considered to be state actors that are subject to § 1983 liability. *See Briley v. California*, 564 F.2d 849, 855-856 (9th Cir. 1977) (noting that "private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement"); *see also Blum v. Yaretsky*, 457 U.S. 991, 1002-12 (1982) (concluding that private nursing homes' decisions to discharge or transfer Medicaid patients did not constitute "state action"). In the FAC, plaintiffs do not allege that defendants McKinley Park Care Center and Gramercy Court Skilled Nursing are state actors. And while the FAC describes defendant Kaiser Permanente Sacramento as a "public medical

3

1   facility," *see* ECF No. 10 ¶ 12, this bare allegation is insufficient to establish that Kaiser acted
2   under color of state law, as both state and federal courts have found that Kaiser hospitals are
3   private institutions.  *See Safari v. Kaiser Found. Health Plan*, 2012 WL 1669351, at *5 (N.D.
4   Cal. May 11, 2012) (noting that "[i]t is undisputed" that defendant Kaiser Foundation Hospitals is
5   a private entity for purposes of § 1983); *Kaiser Found. Hosps. v. Superior Ct.*, 128 Cal. App. 4th
6   85, 102 (Cal App. Dist. 3 2005) ("Since [the Kaiser entities] are private institutions, [the
7   terminated physician's] fair procedure rights . . . arise from [California statutes] and not from the
8   due process clauses of the state and federal Constitutions.").

9         The presumption that conduct by a private entity is not state action may be overcome if
10  "there is such a close nexus between the State and the [private entity's] challenged action that
11  seemingly private behavior may be fairly treated as that of the State itself."  *Brentwood Acad. v.*
12  *Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 & n.2 (2001) (quotations and
13  citations omitted); *see also Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922
14  (9th Cir. 2011).  Plaintiffs fail to rebut this presumption, however, as the allegations in the FAC
15  raise no inference that defendant Kaiser or the defendant nursing facilities performed a
16  government function, engaged in joint activity with the state government, or otherwise had any
17  close connection with the state government.[1]  *See Kirtley v. Rainey*, 326 F.3d 1088, 1092-95 (9th
18  Cir. 2003).

19        The FAC also fails to state an actionable § 1983 claim against defendant Sacramento
20  Mather VA Medical Center because a veterans hospital is a *federal* entity.  *See Lofthus v. Long*
21  *Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 915 (C.D. Cal. 2016) (taking judicial notice under
22  Federal Rule of Evidence 201 that defendant Veterans Hospital is part of the United States
23  Department of Veterans Affairs).  Claims seeking damages for constitutional violations
24  committed by federal employees may be construed under *Bivens v. Six Unknown Named Agents*
25  *of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Iqbal*, 556 U.S. at 675 ("[*Bivens*] is the
26

---

27      [1] The fact that a private hospital or nursing home is subject to governmental regulation
28  and receives government funds does not qualify as state action for § 1983 purposes.  *See Johnson v. Sutter Delta Med. Ctr.*, 2011 WL 5444319, at *2 (N.D. Cal. Nov. 9, 2011).

federal analog to suits brought against state officials under [§ 1983]."). To establish a *Bivens* claim, the allegations must show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution. *Bivens*, 403 U.S. at 389. Relief under *Bivens*, however, is available only when federal officials are *personally* liable for the alleged constitutional violation; a *Bivens* claim cannot be maintained against federal agencies or federal agents sued in their official capacities. *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017); *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). As such, plaintiffs' allegations cannot support a *Bivens* claim because the FAC does not name any individual federal employee as a defendant.[2] Based on the foregoing, plaintiffs fail to allege a § 1983 claim.[3]

In the remaining causes of action in the FAC, plaintiffs assert state-law tort claims, including a claim of wrongful death and negligence premised on alleged violations of the Emergency Medical Treatment and Labor Act ("EMTALA"). *See* ECF No. 10 at 9-16. Also known as the "Patient Anti-Dumping Act," the EMTALA was enacted by Congress to prohibit hospital emergency rooms from refusing to treat indigent and uninsured patients who were unable to pay for care, or from transferring such patients to other hospitals without first stabilizing their condition. *See Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 20010); 42 U.S.C. § 1395dd. To the extent that plaintiffs allege that defendants were negligent under California law because they violated the duty of care set forth in the EMTALA by failing to treat the decedent and by failing to properly stabilize him before he was transferred, plaintiffs' reliance on the

---

[2] Although not listed as a separate cause of action, the FAC also cites the Federal Tort Claims Act, which allows private suits against the United States for damages for loss of property, injury, or death caused by a federal government employee's negligence. *See* 28 U.S.C. § 1346(b)(1); ECF No. 10 ¶ 1. To the extent plaintiffs seek to assert a claim under the FTCA against defendant Sacramento Mather VA Medical Center, they fail to allege an actionable claim. *See Brownback v. King*, __ U.S. __, 141 S. Ct. 740, 746 (2021) (listing six elements required for a claim under 28 U.S.C. § 1346(b)).

[3] In addition to the noted deficiencies, the court also observes that the factual allegations in the FAC do not adequately describe anything that defendants McKinley Park Care Center, Gramercy Court Skilled Nursing, or Sacramento Mather VA Medical Center purportedly did, or failed to do, that violated the decedent's constitutional rights. Accordingly, even if plaintiffs' § 1983 claim had properly alleged state action, their allegations of wrongdoing against the foregoing defendants would still be deficient under Federal Rule of Civil Procedure 8.

EMTALA does not raise a substantial federal issue such that federal question jurisdiction exists over their state-law tort claim.[4]  *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (holding that jurisdiction over federal issues embedded in state-law claims exists if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law."); *Williams v. EDCare Mgmt., Inc.*, 2008 WL 4755744, at *6 (E.D. Tex. Oct. 28, 2008) ("Even if Plaintiffs' causes of action require the court to interpret EMTALA and federal Medicare laws, it does not necessarily follow that federal question jurisdiction exists.").

Because the FAC contains no allegations that establish diversity of citizenship, the court's jurisdiction depends on whether the FAC asserts a claim arising under federal law.  *See* 28 U.S.C. §§ 1331, 1332; *see also Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) (holding that the complaint must specifically allege diverse citizenship of all parties to invoke diversity jurisdiction).  Having dismissed plaintiffs' § 1983 claim—the only cause of action alleging an express violation of federal law—and after weighing the factors of judicial economy, convenience, fairness, and comity, the court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims and dismisses such claims without prejudice.[5]  *See* 28

---

[4] Under the doctrine of negligence per se, codified in California Evidence Code § 669, the standard of conduct set forth in a relevant statute or regulation is adopted as the duty of care; negligence is presumed when the statute or regulation is violated.  *See Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (Cal. App. 5 Dist. 2019).

[5] In any event, it appears doubtful that plaintiffs' allegations plausibly establish a violation of the EMTALA as to any defendant.  While the FAC alleges that the ER doctors at Kaiser Hospital South initially "missed" the decedent's UTI when he first visited the ER, a hospital's failure to detect, or misdiagnose, an emergency condition is not a violation of the EMTALA.  *See Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1166 (9th Cir. 2002) (citation omitted). Additionally, a hospital has a duty to stabilize only those emergency medical conditions that its staff detects, and the "stabilization requirement ends when an individual is admitted for inpatient care."  *Id*. at 1166, 1168 (citation omitted).  The FAC alleges that the decedent was admitted following his first ER visit, despite the failure by Kaiser doctors to diagnose his UTI, and that he was also admitted following his subsequent ER visit, when he received treatment for the UTI before he was transferred to a different facility.  Under the foregoing authority, it is not apparent

U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.").

    I will allow plaintiffs one additional chance to amend before recommending that this action be dismissed. If plaintiffs decide to file a second amended complaint, the amended complaint will supersede the FAC. *See Lacey v. Maricopa Cnty.*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc). This means that the second amended complaint will need to be complete on its face without reference to the prior pleading. *See* E.D. Cal. Local Rule 220. Once a second amended complaint is filed, neither the original complaint nor the FAC serve any function. Therefore, in a second amended complaint, as in an original complaint, plaintiffs will need to assert each claim and allege each defendant's involvement in sufficient detail. The second amended complaint should be titled "Second Amended Complaint" and refer to the appropriate case number. If plaintiffs do not file a second amended complaint, I will recommend that this action be dismissed.

    The court also denies plaintiffs' second request to appoint counsel. ECF No. 9. Generally, pro se litigants do not have a right to counsel in civil actions. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). However, the court can request an attorney represent an indigent civil litigant under certain exceptional circumstances. 28 U.S.C. § 1915(e)(1) ("The court may

---

how this alleged conduct amounts to a violation of the EMTALA. Additionally, the FAC does not sufficiently allege that defendants McKinley Park Care Center and Gramercy Court Skilled Nursing are subject to EMTALA liability. *See* 42 U.S.C. § 1395dd(a), (b) (establishing that the requirements for medical screening and stabilization apply to hospitals with emergency departments).

7

1  request an attorney to represent any person unable to afford counsel"); *see Agyeman v.*
2  *Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir 2004).  In determining whether such
3  circumstances exist, the court must evaluate both the plaintiff's likelihood of "success on the
4  merits and . . . the plaintiff's ability to articulate his claims in light of the complexity of the legal
5  issues involved." *Agyeman*, 390 F.3d at 1103 (citation and internal quotation omitted).
6  The court does not find that plaintiffs' likelihood of success, the complexity of the issues, or the
7  degree of plaintiffs' ability to articulate their claims amount to exceptional circumstances
8  warranting the appointment of counsel.

     Accordingly, it is hereby ORDERED that:

     1.  Plaintiffs' second request for appointment of counsel, EF No. 9, is denied.

     2.  Within thirty days from the service of this order, plaintiffs must either file a second amended complaint or advise the court that they wish stand by their current first amended complaint.  If they select the latter option, I will recommend that this action be dismissed.

     3.  Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   February 8, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8