UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KET T. HAWKINS, Jr, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER PERMANENTE SACRAMENTO, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-0034-KJM-JDP (PS)<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Plaintiffs Ket Hawkins, Jr., and Lajuana L. Thompson, proceeding individually and as co-representatives of the estate of their deceased father, Ket Hawkins, Sr. (the "decedent"), allege that defendants Kaiser Permanente Sacramento ("Kaiser"), Sacramento Mather VA Medical Center, McKinley Park Care Center ("McKinley"), and Gramercy Court Skilled Nursing ("Gramercy") violated 42 U.S.C. § 1983 and certain California laws by failing to provide the decedent emergency medical care, resulting in his premature death. ECF No. 15.

**Screening Order**

**I.    Screening and Pleading Requirements**

A federal court must screen the complaint of any claimant seeking permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon

1

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

**II.     Analysis**

According to the second amended complaint, plaintiffs Ket T. Hawkins Jr. and LaJuana L. Thompson bring this action on behalf of themselves and as co-representatives of the estate of Ket T. Hawkins Sr. Defendants include Kaiser Permanente Sacramento, Sacramento Mather Medical Center, McKinley Park Care Organization, Gramercy Court - Skilled Nursing, and unnamed employees.

Plaintiffs alleges that that on December 6, 2019, their father, Ket Hawkins Sr. ("the decedent") was taken to Kaiser South Emergency Room and was subsequently admitted to the hospital. ECF No. 15 at 3. Although test results confirmed a urinary tract infection ("UTI"), the

1 decedent was discharged on December 8, 2019, without having received treatment for the UTI.
2 *Id.* The following day, the decedent was readmitted to Kaiser South, where it was confirmed that
3 he had a UTI, which was treated with antibiotics. *Id.* at 4. Over the next several weeks, he
4 transferred multiple times between hospitals and nursing facilities, leading to further health
5 complications, including pneumonia and severe sepsis. *Id.* at 9, 17. On February 1, 2020, the
6 decedent passed away at Kaiser Hospital-Morse. *Id.* at 8.

7 Plaintiffs allege that defendants violated the Emergency Medical Treatment and Active
8 Labor Act ("EMTALA") by failing to stabilize the decedent before discharging him. *Id.* at 13-14.
9 They also allege claims for violation of the Eighth and Fourteenth Amendments, and state law
10 claims for negligence. *Id.* at 10-12, 14-16.

11 As with plaintiffs' prior complaints, the second amended complaint fails to state Eighth
12 and Fourteenth Amendment claims under 42 U.S.C. § 1983 against defendants Kaiser, McKinley,
13 and Gramercy. To state a section 1983 claim, a plaintiff must show that a defendant acting under
14 color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C.
15 § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). "The traditional definition of
16 acting under color of state law requires that the defendant in a § 1983 action have exercised
17 power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed
18 with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v.*
19 *Classic*, 313 U.S. 299, 326 (1941)). Although plaintiffs repeatedly label defendants "state
20 actors," *see* ECF No. 15 at 3-9, the amended complaint's bare allegations are insufficient to
21 establish that defendants acted under color of state law.

22 Moreover, private hospitals and nursing homes are generally not considered to be state
23 actors subject to § 1983 liability. *See Briley v. California*, 564 F.2d 849, 855-856 (9th Cir. 1977)
24 (noting that "private hospitals and physicians have consistently been dismissed from § 1983
25 actions for failing to come within the color of state law requirement"); *see also Blum v. Yaretsky*,
26 457 U.S. 991, 1002-12 (1982) (concluding that private nursing homes' decisions to discharge or
27 transfer Medicaid patients did not constitute "state action"); *Safari v. Kaiser Found. Health Plan*,
28 2012 WL 1669351, at *5 (N.D. Cal. May 11, 2012) (noting that "[i]t is undisputed" that

defendant Kaiser Foundation Hospitals is a private entity for purposes of § 1983); *Kaiser Found. Hosps. v. Superior Ct.*, 128 Cal. App. 4th 85, 102 (Cal App. Dist. 3 2005) ("Since [the Kaiser entities] are private institutions, [the terminated physician's] fair procedure rights . . . arise from [California statutes] and not from the due process clauses of the state and federal Constitutions."). Plaintiffs' conclusory allegations that defendants were state actors fail to rebut the presumption that defendants' conduct is not state action. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 & n.2 (2001) (quotations and citations omitted) (holding that the presumption that conduct by a private entity is not state action may be overcome if "there is such a close nexus between the State and the [private entity's] challenged action that seemingly private behavior may be fairly treated as that of the State itself"); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not state action.").

The second amended complaint also fails to state a § 1983 claim against defendant Sacramento Mather VA Medical Center because a veterans' hospital is a *federal* entity. *See Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 915 (C.D. Cal. 2016) (taking judicial notice under Federal Rule of Evidence 201 that defendant Veterans Hospital is part of the United States Department of Veterans Affairs). Claims seeking damages for constitutional violations committed by federal employees may be construed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Iqbal*, 556 U.S. at 675 ("[*Bivens*] is the federal analog to suits brought against state officials under [§ 1983]."). To establish a *Bivens* claim, the allegations must show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution. *Bivens*, 403 U.S. at 389. Relief under *Bivens*, however, is available only when federal officials are *personally* liable for the alleged constitutional violation; a *Bivens* claim cannot be maintained against federal agencies or federal agents sued in their official capacities. *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017); *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). As such, plaintiffs' allegations cannot support a *Bivens* claim because the second amended complaint does not name any

individual federal employee as a defendant.¹  Accordingly, plaintiffs fail to allege a § 1983 claim.

Plaintiffs' remaining causes of action are state-law tort claims, including a claim of wrongful death and negligence premised on alleged violations of the EMTALA.  The EMTALA, also known as the "Patient Anti-Dumping Act," was enacted by Congress to prohibit hospital emergency rooms from refusing to treat indigent and uninsured patients who were unable to pay for care, or from transferring such patients to other hospitals without first stabilizing them.  *See Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2010); 42 U.S.C. § 1395dd.  Plaintiffs' claim that defendants were negligent under California law because they violated the duty of care set forth in the EMTALA by failing to treat the decedent before he was transferred does not raise a substantial federal issue such that federal question jurisdiction exists over their state-law tort claim.²  *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (holding that jurisdiction over federal issues embedded in state-law claims exists if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) ("That some standards of care used in tort litigation come from federal law does not make the tort claim

---

¹ The second amended complaint also cites the Federal Tort Claims Act ("FTCA"), which allows private suits against the United States for damages for loss of property, injury, or death caused by a federal government employee's negligence.  ECF No. 15 at 2; *see* 28 U.S.C. § 1346(b)(1).  To the extent that plaintiffs seek to assert a claim under the FTCA against defendant Sacramento Mather VA Medical Center (they do not list this as a separate cause of action), they fail to allege an actionable claim.  *See Brownback v. King*, 592 U.S. 209, 212 (2021) (listing six elements required for a claim under 28 U.S.C. § 1346(b)).

² To the extent that plaintiffs are attempting to assert a claim for violation of the EMTALA, the complaint fails to make out such a claim.  Plaintiffs allege that defendants misdiagnosed the decent and ignored plaintiffs' statements about the likelihood of him having a UTI when he first visited the emergency room.  ECF No. 15 at 12.  However, a hospital's failure to detect, or misdiagnose, an emergency condition is not a violation of the EMTALA.  *See Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1166 (9th Cir. 2002).  Instead, a hospital has a duty to stabilize only those emergency medical conditions that its staff detects, and the "stabilization requirement ends when an individual is admitted for inpatient care." *Id*. at 1166, 1168 (citation omitted).  The FAC alleges that the decedent was admitted following his first ER visit, despite the failure by Kaiser doctors to diagnose his UTI, and that he was also admitted following his subsequent ER visit, when he received treatment for the UTI before he was transferred to a different facility.  Thus, plaintiffs' allegations fail to state a claim for violation of the EMTALA.

Case 2:22-cv-00034-KJM-JDP   Document 16   Filed 04/24/25   Page 6 of 7

one 'arising under' federal law."); *Williams v. EDCare Mgmt., Inc.*, 2008 WL 4755744, at *6 (E.D. Tex. Oct. 28, 2008) ("Even if Plaintiffs' causes of action require the court to interpret EMTALA and federal Medicare laws, it does not necessarily follow that federal question jurisdiction exists.").[3]

The second amended complaint does not allege that the parties' citizenship is diverse, thereby failing to establish diversity jurisdiction over plaintiffs' state law claims. *See* 28 U.S.C. § 1332. Having found that plaintiffs' federal claims are subject to dismissal, I recommend that the court decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.").

In light of the second amended complaint's deficiencies and considering that plaintiffs have already been given multiple opportunities to amend their complaint, I find that granting plaintiffs another opportunity to amend would not cure the current complaint's deficiencies. I therefore recommend dismissal without leave to amend. *See Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) ("Dismissal of a pro se complaint without leave to

---

[3] Plaintiffs' negligent claims also appear to be premised, at least in part, on defendants' purported violation of the Rehabilitation Act, 29 U.S.C. § 794. *See* ECF No. 15 at 13 (alleging defendants had a mandatory duty to provide emergency medical care pursuant to the Rehabilitation Act). To the extent that plaintiffs also intended to allege a Rehabilitation Act claim, they fail to do so. Section 505 of the Rehabilitation Act "creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance." *Fleming v. Yuma Regional Medical Center*, 587 F.3d 938, 940 (9th Cir. 2009). Plaintiffs do not allege that the decedent was denied medical care because he was disabled or that he was otherwise subject to discrimination.

amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks and citations omitted).

Accordingly, it is hereby RECOMMENDED that:

1. The second amended complaint's federal claims be DISMISSED without leave to amend.

2. The court decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

3. The Clerk of Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   April 23, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE